IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

**KAITLIN TAGG,**

        **Plaintiff,**

v.                                                                                               **Civil Action No. 4:24cv6**

**RIVERSIDE HEALTHCARE
ASSOCIATION, INC.,**

        **Defendant.**

## DEFENDANT'S MEMORANDUM IN SUPPORT OF
## MOTION FOR JUDGMENT AS A MATTER OF LAW

Defendant Riverside Healthcare Association, Inc. ("Riverside" or "Defendant"), by counsel, pursuant to Fed. R. Civ. P. 50(a), submits the following Memorandum in Support of its Motion for Judgment as a Matter of Law. Plaintiff has not presented a legally sufficient evidentiary basis for the jury to find in her favor on any claim at issue in the ongoing trial, and Riverside is thus entitled to judgment as a matter of law on all of Plaintiff's claims.

### I.    INTRODUCTION

Plaintiff Kaitlin Tagg brought this lawsuit against her former employer, Riverside, claiming her August 23, 2022 discharge was discriminatory and retaliatory in violation of the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") and the Virginia Human Rights Act, Va. Code Ann. § 2.2-3900 *et seq.* ("VHRA").[1] [ECF No. 21]. She bears the burden of proof on each of these claims.

---

[1] Plaintiff's claims of sex discrimination were dismissed pursuant to the Court's Order of March 5, 2025 [ECF No. 32].

Plaintiff's evidence falls far short. Plaintiff has not established a *prima facie* case of discriminatory discharge or retaliation. The evidence establishes that Plaintiff was not meeting Riverside's legitimate expectations for job performance in its medical residency program. She suffered from a multitude of academic woes, multiple instances of tardiness to work shifts, conferences, and a national exam, and a lack of willingness to engage in the probation process to address her shortcomings. The evidence demonstrates that Plaintiff was repeatedly counseled, both verbally and in writing, in an effort to address her shortcomings. But Plaintiff was not willing to participate in her remediation and continued to struggle to meet Riverside's legitimate expectations in numerous areas. Plaintiff's ongoing struggles negate any possible reasonable inference of unlawful discrimination. Nor has Plaintiff established that her termination occurred because of her engaging in a protected activity by filing discrimination charges. Instead, the evidence shows that Plaintiff's termination was based on the totality of her performance, which culminated in an incident giving rise to a patient safety concern. Plaintiff has not met her burden of proof to establish a *prima facie* case of discriminatory discharge or retaliation, and judgment as a matter of law should therefore be entered for Riverside on all of Plaintiff's claims.

## II. ARGUMENT

### A. Legal Standard

The standard for a motion for judgment as a matter of law under Rule 50(a) "largely mirrors" the standard governing motions for summary judgment pursuant to Rule 56, "the difference being that district courts evaluate Rule 50(a) motions in light of the trial record rather than the discovery record." *Dupree v. Younger*, 598 U.S. 729, 731-32 (2023) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-251 (1986)). A district court may enter judgment as a matter of law prior to submission of the case to the jury when "a party has been fully heard on an

issue during a jury trial and the court finds that a reasonable jury would not have a legally sufficient evidentiary basis to find for the party on that issue . . . ." Fed. R. Civ. P. 50(a)(1). Rule 50(a) allows the trial court to remove cases or issues from the jury's consideration "when the facts are sufficiently clear that the law requires a particular result." *Weisgram v. Marley Co.*, 528 U.S. 440, 447-448 (2000) (citing 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, p. 240 (2d ed. 1995)).

To determine whether to grant a motion for judgment as a matter of law, the Court "must examine the evidence in the light most favorable to the non-moving party and determine whether a reasonable trier of fact could draw only one conclusion from the evidence." *Brown v. CSX Transp., Inc.*, 18 F.3d 245, 248 (4th Cir. 1994). "[T]he movant is entitled to judgment as a matter of law if the nonmoving party failed to make a showing on an essential element of this case with respect to which he had the burden of proof." *Price v. City of Charlotte*, 93 F.3d 1241, 1249 (4th Cir. 1996) (internal citations omitted). In considering a Rule 50 motion, the question is "whether a fair-minded jury could return a verdict for the plaintiff on the evidence presented. The mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff.'" *Hoban v. Grumman Corp.*, 717 F. Supp. 1129, 1133 (E.D. Va. 1989) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986)). Here, Plaintiff has failed to meet her burden of proof on her claims, and the law requires judgment in favor of Riverside.

**B.     Plaintiff Failed to Introduce Evidence to Prevail on Her Disability Discrimination Claim.**

To establish a *prima facie* case of disability discrimination, a plaintiff must show: (1) she is a "qualified individual" with a disability; (2) she suffered an adverse employment action; (3) her job performance at the time of the adverse employment action met legitimate expectations of the

employer; and (4) the circumstances surrounding the adverse employment action give rise to a reasonable inference of unlawful discrimination. *See Reynolds v. Am. Nat. Red Cross,* 701 F.3d 143, 150 (4th Cir. 2012); *Haulbrook v. Michelin No. Am., Inc.*, 252 F.3d 696, 702 (4th Cir. 2001).[2]

1. **Plaintiff failed to establish that she was a "qualified individual" with a disability.**

To establish the first element of her disability discrimination claim, Plaintiff must be a "qualified individual." A qualified individual is defined as "an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8); *see also Lamb v. Qualex, Inc.*, 33 F. Appx. 49, 57 (4th Cir. 2002) ("[P]laintiff must show that [s]he can perform the essential functions of the job at the time of the employment decision or in the immediate future."); *Tyndall v. Nat'l Educ. Centers, Inc. of California*, 31 F.3d 209, 213 (4th Cir. 1994) (a "qualified individual" must be "able to meet all of a program's requirements in spite of his handicap").

In *Shin v. Univ. of Md. Med. Sys. Corp.*, 369 Fed. Appx. 472 (4th Cir. 2010), involving a medical resident's claim of discriminatory discharge and failure to provide reasonable accommodation, the court considered whether the plaintiff could perform the essential functions of his job as a medical resident. Like the instant case, the essential functions of the plaintiff's position were, among other things, "to provide competent medical care to patients with efficiency and reasonable autonomy," be able to "quickly and accurately integrate all information received," "prescribe appropriate medications in an efficient and timely manner," and "provide safe and

---

[2] Plaintiff has brought claims under the ADA and the VHRA. A VHRA claim requires Plaintiff to establish the same elements of an ADA disability discrimination claim. *See Flippo v. American Home Prods. Corp.*, 59 F. Supp.2d 572, 578 (E.D. Va. 1999) ("[T]he allegation that the Defendant violated the ADA necessarily includes the implicit allegation that the Defendant also violated the VDA and the VHRA.").

appropriate care for patients." *Id.* at 480 (internal quotations omitted). Where the plaintiff's performance reviews were unsatisfactory and noted that he required constant supervision to prevent medical errors and was highly inefficient, the court found that "no reasonable jury could find that, while at UMMSC, Dr. Shin provided 'safe and appropriate care' for patients 'with efficiency and reasonable autonomy." *Id.* at 481. The Fourth Circuit therefore affirmed the finding that the plaintiff was not a qualified individual with a disability under the ADA. *Id.* at 483; *see also Halpern v. Wake Forest Univ. Health Scis.*, 669 F.3d 454, 463-64 (4th Cir. 2012) (recognizing that professionalism is "an essential requirement of medical education" and that given the evidence of the plaintiff's unprofessional behavior, the plaintiff was not "otherwise qualified" for the medical school program); *Tartaro-McGowan v. Inova Home Health, LLC*, 91 F.4th 158, 164 (4th Cir. 2024) (affirming district court's finding that the plaintiff was not a "qualified individual" when she could not perform an essential function of her position, which was performing direct patient care field visits, even after a reasonable accommodation was offered)

Plaintiff has failed to demonstrate that she is a qualified individual who can perform the essential job functions of a medical resident in an emergency room setting. When Plaintiff's counsel questioned Pam Griffin, Riverside's HR Business Partner to the Emergency Medicine Residency Program, whether Plaintiff was qualified, she testified that the Medical History Questionnaire, which Plaintiff completed, established that Plaintiff could perform the essential functions of the job of medical resident. But Ms. Griffin did not agree that meant that Plaintiff was qualified under the ADA.

Dr. Knoop, Program Director of Riverside's Emergency Medicine Residency Program, testified that a medical residency program is first and foremost a training program. According to Dr. Knoop, the employment aspect of the program is almost in the background. As a first-year

5

resident, Plaintiff was training to become an emergency medicine physician, she was not yet qualified as an emergency medicine physician. When asked if Plaintiff was qualified as a first-year resident, Dr. Knoop responded that she was <u>but only if</u> she satisfied the areas of improvement identified in her Letter of Probation. Plaintiff has not presented sufficient evidence to show that she did in fact satisfy all the areas of improvement identified. As a result, Plaintiff failed to present sufficient evidence to show that she was a qualified individual under the ADA.

    **2.    Plaintiff failed to establish that her job performance at the time of the adverse employment action met Riverside's legitimate expectations.**

The evidence demonstrates that Plaintiff's job performance as a first-year medical resident failed to meet Riverside's legitimate expectations. Plaintiff received a Letter of Concern on January 19, 2022, identifying deficiencies in the competency area of Professionalism as reflected in Plaintiff's "pattern of tardiness." *See* Defense Exhibit 4. While Dr. Knoop agreed that residents are not specifically and separately evaluated on their attendance, he testified that timeliness is a component of professionalism, one of the core competencies on which residents are evaluated.

As Dr. Knoop testified, the Clinical Competency Committee (CCC) met quarterly to assess each resident and how that resident is progressing within the program. When the CCC met in early January 2022, it noted that Plaintiff was "below glideslope" and her score was below the class average. *See* Defense Exhibit 4. Even after Plaintiff was given the Letter of Concern in January 2022, the evidence demonstrates that she continued to struggle to meet the demands of the Emergency Medicine Residency Program in terms of both professionalism and medical knowledge. According to Dr. Kylie Conroy, Plaintiff required more supervision than her peers, and she displayed gaps in medical knowledge and her presentations were disorganized. Dr. Conroy observed that Plaintiff struggled on shift and with test taking. Dr. Conroy testified that Plaintiff had been identified as "at risk" to fail in emergency medicine.

The evidence shows that between January and April 2022, Plaintiff arrived late to exams and conferences. Dr. Knoop testified that Plaintiff was late for the national In-Training Exam (ITE). *See* Joint Exhibit 3. Dr. Knoop testified that Plaintiff being late for the ITE meant that the start time for the exam was delayed for all of the residents taking the exam. Plaintiff was again counseled on March 2, 2022. *See* Joint Exhibit 15. As Dr Knoop testified, Plaintiff's performance was not on the trajectory they were hoping to see, that they were hoping to see improvement after the Letter of Concern but instead, Plaintiff continued to struggle with professionalism concerns.

Plaintiff's most concerning inability to meet her essential job functions and Riverside's legitimate expectations in terms of professionalism was her refusal to disclose her medical condition and refusal to acknowledge her own limitations as a result of that condition. Dr. Knoop testified that it is a basic requirement as a physician to be physically able to provide patient care. As Dr. Jackson testified, a medical condition that affects a doctor's ability to do her job is an issue of patient safety, and this is a professionalism concern.

The evidence shows that Plaintiff continued to fall below Riverside's legitimate expectations regarding professionalism after she was placed on probation. Although the April 13, 2022 Letter of Probation required "time in the Simulation Lab to work on deficiencies" and monthly meetings with her advisor and Program Leadership as part of the Correction/Remediation Plan and advised Plaintiff to "take an active role in [her] remediation" (*see* Joint Exhibit 4), Plaintiff frequently was non-responsive to efforts to help her comply with the Plan. Dr. Jackson testified that although she was prepared to work with Plaintiff in the Simulation lab to help her prepare to retake her advancement board exam, she had difficulty getting Plaintiff to schedule this. According to Dr. Jackson, Plaintiff was unwilling to accept the assistance that was being offered and did not accept that she had any need for remediation. Dr. Conroy also testified that although

7

the faculty at Riverside went above and beyond in their efforts to remediate Plaintiff, Plaintiff took no responsibility for her performance. Dr. Conroy described Plaintiff's lack of ability and lack of insight as "incredibly dangerous." As Dr. Jackson testified, "no other resident [in her career] was as unwilling [as Plaintiff] to acknowledge her shortcomings."

Dr Stolle's testimony further established that Plaintiff failed to meet Riverside's expectations for professionalism and medical knowledge. Dr. Stolle testified that being on time is critical for an emergency medicine physician. Plaintiff, however, displayed a pattern of tardiness. Dr. Stolle further testified about an incident that occurred in May 2022, after Plaintiff was placed on probation, where Plaintiff charted on a patient she had not actually seen.

Plaintiff continued to demonstrate a lack of professionalism and failure to follow the policies of the residency program during her probation. The evidence establishes that Plaintiff's attending physician during the August 5, 2022 shift, Dr. Forsythe, reported a concern regarding Plaintiff's patient care that involved Plaintiff's medical knowledge of pharmacology and Plaintiff initiating a plan for patient care without discussing it with him as her attending physician, which was a violation of Riverside's policies for a first-year resident. According to Dr. Stolle, Plaintiff's ultimate termination from the program was not the result of Plaintiff's medical mistake; rather, Plaintiff's failure to engage her supervising attending physician in the decision-making process, along with all of her other performance struggles and professionalism concerns, led to her termination. Plaintiff's own expert, Dr. Bartfield, agreed that Plaintiff's termination was the result of the breach in her scope of practice. Dr. Bartfield further agreed that Riverside went through all the steps of progressive discipline that the ACGME provides in its efforts to counsel and remediate Plaintiff.

In short, the evidence regarding Plaintiff's academic performance, her lack of professionalism and failure to follow Riverside's policies demonstrate that Plaintiff failed to meet her burden to establish that her job performance met Riverside's legitimate expectations.

3. **Plaintiff failed to establish that the circumstances surrounding the adverse employment action give rise to a reasonable inference of unlawful discrimination.**

Nor did Plaintiff present sufficient evidence to show the circumstances surrounding the adverse employment action give rise to a reasonable inference of unlawful discrimination. The evidence established that Plaintiff was repeatedly counseled, both informally and formally, regarding her professionalism issues before anyone involved in the residency program at Riverside was aware of her medical condition.

Pam Griffin testified that the Medical History Questionnaire, Joint Exhibit 8, was maintained by Occupational Health. In that form, Plaintiff disclosed a medical condition but did not indicate that she suffered from a disability. Plaintiff indicated on that form that she could perform the essential functions of the job and did not need an accommodation. As Ms. Griffin testified, privacy concerns meant that the Medical History Questionnaire was not shared with any department or individual outside of Occupational Health unless there was a need to do so. Because Plaintiff did not request an accommodation at the time she completed the Questionnaire, Ms. Griffin testified there was no need to share the information in that Questionnaire with anyone in the Riverside HR Department or the Emergency Medicine Residency Program. Plaintiff failed to present any evidence that anyone within the Riverside Emergency Medicine Residency Program, including Dr. Knoop, had knowledge of her medical condition at any time prior to March 2022, when Plaintiff disclosed that information to Dr. Conroy. At that time, Plaintiff asked Dr. Conroy not to tell Dr. Knoop.

Dr. Knoop, the Program Director of the Residency Program, testified that he did not have knowledge of Plaintiff's specific medical condition until April 14, 2022. As Dr. Knoop testified, when he and the other core faculty of the program grew concerned regarding Plaintiff's pattern of tardiness and academic struggles, they considered various explanations for her performance, including whether she was struggling with depression, substance abuse issues or some other medical issue. According to Dr. Knoop, it was akin to performing a differential diagnosis to determine the reason Plaintiff was struggling to meet Riverside's performance expectations. Because of Dr. Knoop's concern, he asked Dr. Conroy to meet with Plaintiff to try to identify the explanation for her struggles. *See* Plaintiff's Exhibit 25. Thus, Plaintiff has not presented evidence that Dr. Knoop was aware of Plaintiff's medical condition at the time he drafted the letter of probation on April 13, 2022.

Dr. Knoop further testified that he identified areas for Plaintiff' improvement because he wanted her to succeed in the program.  According to Dr. Knoop's testimony, the core faculty in the Emergency Medicine Residency Program, including Dr. Knoop himself, all wanted Plaintiff to succeed in the program. Dr. Knoop testified that the goal of the April 2022 probation was to bring Plaintiff back to where she needed to be in the program, to get her back on track.

Furthermore, Plaintiff's evidence regarding Dr. Knoop's conversations with Pam Griffin in March and April of 2022 do not give rise to a reasonable inference of unlawful discrimination. If anything, that evidence does just the opposite. According to both Ms. Griffin and Dr. Knoop, Dr. Knoop approached Ms. Griffin in March 2022 to get some general information regarding leave options for residents. It was during this time that Dr. Knoop suspected, but did not know, that Plaintiff was struggling with some underlying issue or condition that was impacting her ability to

10

meet the performance demands of the residency program. He went to Ms. Griffin to get additional information about how to support Plaintiff, not punish her.

The evidence further establishes that when Plaintiff did actually request an accommodation, a process that began on May 23, 2022, when Plaintiff contacted Ms. Griffin, Riverside worked with Plaintiff to determine a reasonable accommodation. Plaintiff's request for an accommodation was not denied. Rather, Riverside and Plaintiff agreed that Plaintiff would be scheduled with one consistent night off each week for Plaintiff to receive treatment for her medical condition. Plaintiff was satisfied with this accommodation.

Plaintiff's evidence does not establish that Plaintiff's termination from the residency program gives rise to a reasonable inference of unlawful discrimination. As Dr. Knoop testified, the members of the CCC did not easily come to the decision to recommend Plaintiff be terminated from the residency program. According to Dr. Knoop, it was a tough decision because the faculty wanted Plaintiff to succeed. Dr. Jackson testified that the CCC spent a long time debating and deliberating before deciding to recommend Plaintiff's termination. Dr. Stolle testified that Plaintiff's termination was based on her ongoing performance issues and was not the result of one single incident. Thus, the circumstances surrounding Plaintiff's termination, including multiple efforts to counsel and remediate Plaintiff, do not give rise to a reasonable inference of unlawful discrimination.

Based on the evidence presented, Plaintiff has not satisfied her burden of proof on her claim of disability discrimination, and judgment as a matter of law should be entered in favor of Riverside.

C. **Plaintiff Failed to Introduce Evidence to Satisfy Her Burden to Prove Unlawful Retaliation.**

42 U.S.C. § 12203(a) provides that a person shall not be discriminated against "because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge . . . or participated in any manner in an investigation, proceeding or hearing." A retaliation claim under the ADA requires either direct evidence of retaliation or an inference of retaliation under the *McDonnell Douglas* burden-shifting analysis. *See Canning v. Creighton Univ.*, 995 F.3d 603, 615 (8th Cir. 2021).

Plaintiff must present evidence of the following elements to establish a *prima facie* case of ADA retaliation: (1) Plaintiff engaged in a protected activity; (2) Plaintiff suffered an adverse action; and (3) a causal link exists between the protected activity and the adverse action. *Rhoads v. F.D.I.C.*, 257 F.3d 373, 392 (4th Cir. 2001); *Foster v. Univ. of Maryland-Eastern Short,* 787 F.3d 243, 250 (4th Cir. 2015). To establish a causal connection, Plaintiff must show that the decisionmaker knew of the protected activity when the alleged retaliation occurred. *Roberts v. Glenn Indus. Grp., Inc.*, 998 F.3d 111, 124 (4th Cir. 2021). Plaintiff bears the burden of persuasion regarding but-for causation. *Rhoads*, 257 F.3d at 392; *Canning*, 995 F.3d at 615.

Furthermore, there must exist "some degree of temporal proximity to suggest a causal connection." *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 501 (4th Cir. 2005). A "lengthy time lapse between the [defendant's] becoming aware of the protected activity and the alleged adverse . . . action" often "negates any inference that a causal connection exists between the two." *Id.* Temporal proximity must be very close to show sufficient evidence of causality. *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001).

Moreover, if the evidence shows that the employer would have terminated the employee whether or not the employee exercised her rights, the employer is not liable for retaliation.

12

*Canning*, 995 F3d at 616. In *Canning*, the court found that Creighton would have terminated the plaintiff following a serious patient-safety error made while the plaintiff was on probation regardless of whether the plaintiff's attorney had sent Creighton a letter several months earlier. *Id.* Finding no causal connection between the attorney's letter in March 2016 and the plaintiff's termination in January 2017, the court found the plaintiff failed to establish a *prima facie* case for retaliation. *Id.*

Such is the case here. Plaintiff has offered no evidence to demonstrate retaliation. Instead, the evidence establishes that Plaintiff had ongoing and well documented struggles to meet the demands of the Emergency Medicine Residency Program. She was verbally counseled regarding her tardiness and professionalism. She was given a Letter of Concern that documented Riverside's concerns with her performance in terms of medical knowledge and professionalism. She continued to receive counseling following that Letter of Concern but failed to show the expected improvement and ultimately was placed on probation. Plaintiff's struggles culminated in the concerns involving patient safety arising from Plaintiff's patient care on August 5, 2022. Dr. Forsythe was unaware at that time that Plaintiff had filed an EEOC charge or that she had raised concerns of discrimination and retaliation. Like in *Canning*, given the serious patient safety issues that occurred while Plaintiff was on probation and given the totality of her performance, the evidence establishes that Riverside would have terminated Plaintiff regardless of Plaintiff's EEOC charge.

Moreover, even if Dr. Forsythe had been aware of Plaintiff's EEOC charge or request for accommodation, this would not establish Plaintiff's *prima facie* case of retaliation. *See Constantine,* 411 F.3d at 501 (recognizing "knowledge alone, however, does not establish a causal connection between the protected activity and the adverse action); *see also Bryant v. Jones*, 575

13

F.3d 1281, 1308 (11th Cir. 2009) ("Mere awareness of Plaintiff's requested accommodations is not strong evidence of retaliation—in fact, it is not necessarily evidence of retaliation at all.")

Furthermore, the amount of time that passed between Plaintiff filing her EEOC charge and her termination belies a causal connection between the two events. Plaintiff filed her charges with the EEOC and DHR on or about May 5, 2022. Plaintiff was terminated on August 23, 2022, following the incident of patient safety that occurred on August 5, 2022, more than three and a half months after the discrimination charges were filed. Thus, Plaintiff cannot show a causal link to support her retaliation claim. *See Scott v. Lori*, No. ELH-19-2014, 2020 U.S. Dist. LEXIS 119750, at *55 (D. Md. July 8, 2020) ("[A] lapse of two-and-a-half months between the protected activity and an adverse employment action is sufficiently long so as to weaken significantly the inference of causation."); *Swann v. US Foods, Inc.*, 2015 U.S. Dist. LEXIS 78665 at *18-19 (E.D.Va. June 17, 2015) (recognizing that "courts have consistently held that a period of three or four months between protected activity and adverse employment action is insufficient to establish a causal link between the two.")

Plaintiff has not established all of the elements of a *prima facie* case for retaliation. As a result, the Court should enter judgment as a matter of law in favor of Riverside on Plaintiff's retaliation claims.

### III.    CONCLUSION

For the foregoing reasons, Riverside Healthcare Association, Inc., respectfully requests that this Court grant its Motion for Judgment as a matter of law on all of Plaintiff's claims, and for such other relief as the Court deems just and proper.

Dated:  November 17, 2025

**RIVERSIDE HEALTHCARE ASSOCIATION, INC.**


By:   /s/ Kathleen M. McCauley
        Counsel

Kathleen M. McCauley, Esq. (VSB # 39028)
Amanda L. Short, Esq. (VSB # 98398)
MORAN REEVES & CONN PC
1211 East Cary Street
Richmond, Virginia 23219
Phone: 804-421-6250
Fax: 804-421-6251
kmccauley@moranreevesconn.com
ashort@moranreevesconn.com
*Counsel for Riverside Healthcare Association, Inc.*

## CERTIFICATE OF SERVICE

I certify that on this 17th day of November 2025, I electronically filed the foregoing pleading using the CM/ECF System, which will send notifications of the filing to all counsel of record:

>R. Scott Oswald, Esquire
>Anita Mazumdar Chambers, Esquire
>The Employment Law Group, P.C.
>1717 K Street NW, Suite 1110
>Washington, DC 20006
>Telephone: (202) 261-2821
>Facsimile: (202) 261-2835
>soswald@employmentlawgroup.com
>achambers@employmentlawgroup.com
>
>*Counsel for Plaintiff*

                                                                /s/ Kathleen M. McCauley